## Nicholson's Estate

*H. Joseph Harrison,* for accountant.

*Leonard F. Merkel,* for Mildred N. Barry.

*H. Lester Haws* and *Margaret Corson,* for claimants.

DANNEHOWER, J. (specially presiding), April 12, 1946.—Decedent died on August 9, 1944, intestate, and letters of administration on his estate were granted to the accountant, his widow, on August 11, 1944.

The account shows a balance for distribution of $830.12.

The estate is grossly insolvent. Claims totalling $96,746.67, are set forth in the petition for adjudication, but the claim of Fidelity-Philadelphia Trust Company set forth in said list of claims at $94,750, has been reduced to $20,500.

In addition to the above admitted general claims, the claim of May V. Brown, 438 West Montgomery Avenue, Haverford, Pa., was presented at the audit in the sum of $55.65, the cost of a mattress, pillow, and rug destroyed, and cleaning room, caused by the dece-

dent's illness. Ordinary use of these articles would not involve their destruction, and when such destruction is occasioned by the carelessness or uncontrollable actions of a decedent before death, his estate is liable for the value of the articles destroyed, such destruction not being incidental to a use of a rented room: Cook's Est., 12 D. & C. 503 (1928). The claim is allowed as a general claim.

Among the claims presented is the claim of Frankenfield Funeral Home for the sum of $666.50, for the funeral expenses of decedent. It is a policy of this court of long standing to allow not more than $300 for funeral expenses out of the estate of an insolvent decedent. For payment of the balance the undertaker must look to the person who contracted for the funeral. The claim of Frankenfield Funeral Home for funeral expenses is allowed as a preference in the sum of $300.

Two other claims were presented as preferred: Namely, Charles A. Steiner, M.D., in the sum of $185, made up of two items, the first for treatment of decedent at the Bryn Mawr Hospital from December 21, 1943, to December 27, 1943, for comminuted fracture of the left clavicle, $50, and January 1, 1944 to January 27, 1944, for fracture of the base of the skull, concussion, and refracture of clavicle, $135; and G. Gordon Snyder, M.D., for the sum of $940 for medical treatment to decedent at the claimant's office, decedent's home, and at Bryn Mawr Hospital, from July 31, 1941, to March 31, 1944. In both of these claims, as presented, the claimants base their right to a preference under the act of assembly on their allegation that the services which they rendered decedent were performed during his last illness, in that they treated him for alcoholism, which they allege was the cause of his death. Both of the claimants were permitted to testify in their own behalf without objection, and they both testified that they had never treated decedent

for alcoholism. Dr. Steiner is a surgeon, and Dr. Snyder is an otolarnygologist. Decedent died on August 9, 1944, at the age of 39 years. The last treatment rendered him by Dr. Steiner, the surgeon, for which claim is made, was on January 27, 1944, although he did treat decedent from March 6 to March 30, 1944, for contusions and lacerations of the neck and left wrist, the result of an attempted suicide, but, inasmuch as decedent was a ward patient in the hospital, no claim was made for that operation.

Dr. Snyder treated decedent on numerous occasions, as shown by copies of his books of original entry which are attached to this statement of claim, from July 31, 1941, to March 30, 1944, and the charges exceed the credits during that period by the sum of $398. The difference between this amount and the sum of $940 claimed, consists of an entry on sheet 2: "Sept. 1937 to July 1941, Balance $542". This latter item is not an item of original entry and is not sustained by any other proof. It is therefore disallowed.

Thus, we have one claimant, Dr. Steiner, making claim for surgical services rendered decedent, in repairing various fractures and lacerations, six months before decedent's death, and the other, Dr. Snyder, making claim for having treated decedent for sinusitis not later than four months before decedent's death. There is no evidence that either of the claimants saw decedent within those respective periods prior to his death. Neither is there any evidence before us that the matters for which they treated decedent were causes of his death nor that they were in any way connected with the cause of death, nor that he was incapacitated by such injuries or illness up to or at the time of his death. Whether either of the claimants could have been in a position to testify as to what caused decedent's death may be doubted, because they had not seen him for months before his death occurred.

Although a claim for medical attendance upon a decedent who died, after a lingering illness, of consumption, was allowed as a preferred claim for attendance during last illness: Jones's Estate, 2 Chest. 302, 1 Lanc. 334 (1884) ; and the services of a physician rendered within six months were held to be preferred, though they ceased two months prior to decedent's death, where he died with the disease with which he was afflicted at their inception: Dawson's Estate, 18 Pitts. L. J. 63 (1887) ; and a claim for irregular visits by a physician for three years, during a progressive disease, terminating fatally, was allowed as a preferred claim as medical attendance during last illness: Roop's Estate, 22 Dist. R. 484 (1913) ; and a preferred claim for services and medicine furnished was sustained where the illness was found to have been fatal from the first, and that the attendance given during the year and a half of said last illness was justifiable under the circumstances: Staggers' Estate, 8 Pa. Superior Ct. 260 (1898) ; and a claim against decedent's estate for medical attendance was allowed where the patient was suffering from fatal illness extending over a number of years, although the exact cause of death was not given: Crocker's Estate, 65 Pitts. L. J. 328 (1916), nevertheless the illness must be the proximate, not the remote cause of death: Reese's Estate, 2 Pearson 482 (1872). It was also held that where death resulted from lingering illness, the claim for medical service is not entitled to preference during the entire length of the illness under the act requiring that "last illness" shall constitute a preferred claim against the estate, since the term "last illness", includes only the illness after the patient is prostrated and the services are constantly necessary: Duckett's Estate, 1 Kulp 227.

Under the evidence presented and the law as we interpret it, both claimants have failed to sustain the right which they assert to have their claims considered

in the preferred class. To the extent herein set forth the claims are allowed as general claims. . . .

The account is confirmed, and it is ordered and decreed that Kathryn N. Nicholson, administratrix, as aforesaid, forthwith pay the distributions herein awarded.

And now, April 12, 1946, this adjudication is confirmed nisi.